```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

**UNITED STATES OF AMERICA**       :
                                   :
v.                                 :      **Crim. No. 3:01cr131 (JBA)**
                                   :
**LEONARD GRIMALDI**               :

### Ruling on Motion for Early Termination of Supervised Release [Doc. # 54]

Defendant Leonard Grimaldi pled guilty to two counts of an indictment charging him with RICO conspiracy in violation of 18 U.S.C. § 1962(d) and filing a materially false income tax return in violation of 26 U.S.C. § 7206(1), and was sentenced to 14 months' imprisonment, followed by a three-year period of supervised release with conditions which concludes August 30, 2007.  He now seeks early termination of his supervised release pursuant to 18 U.S.C. § 3583(e)(1) and Fed. R. Crim. P. 32.1(c), arguing that his supervised release status has resulted in a "serious financial burden" in that a substantially increased premium for a life insurance policy he seeks to purchase for the protection of his family is charged because of his supervised release status.  For the reasons that follow, defendant's Motion will be DENIED.

**I.   Background**

In a letter dated October 3, 2006, defendant's insurance broker James Berliner of Berliner-Gelfand & Co., Inc. advised defendant that Prudential would charge him an annual premium of

1

$2,915 "based on [his] current status of being on 'Supervised Release,'" whereas "the policy would have been issued as applied for at the $940. annual premium" otherwise.  (Letter, Def. Ex. B.)

Defendant has been in compliance with all terms and conditions of his supervised release, and has satisfied the fine and restitution obligations of his sentence, including payment of all applicable back taxes and completion of community service. The United States Probation Officer supports Grimaldi's request for early termination, and the Government takes no position on the matter.

Based on the Sentencing Guidelines calculation in the Presentence Report, Grimaldi faced a sentencing range of 41 to 51 months on Count 1 and 36 months on Count 2, but the Court granted him a sizeable departure based on his substantial assistance to the Government in the prosecution and trial of co-defendant former Bridgeport mayor Joseph Ganim.

Grimaldi reports modest earnings and no savings, and asserts that he "strives on a daily basis to increase his earning capacity and build his business, all while assuming the additional expenses associated with his parents' recent relocation into his home" (Def. Mem. at 2).  He claims that his circumstances are unique in that the 300% increased life insurance premium "has resulted in a serious financial burden" on

him, and that the granting of this Motion would provide his parents with a "sense of closure" (id.).

## II. Standard

This Court may, after considering certain enumerated statutory factors,[1] "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, . . . if it is satisfied that such action is warranted by the conduct of the defendant released

---

[1] The factors to be considered are:

```
    (1) the nature and circumstances of the offense and
the history and characteristics of the defendant;
    (2) the need for the sentence imposed-- . . .
       (B) to afford adequate deterrence to criminal
conduct;
       (C) to protect the public from further crimes of
the defendant; and
       (D) to provide the defendant with needed
educational or vocational training, medical care, or
other correctional treatment in the most effective
manner;
. . .
(4) the kinds of sentence and the sentencing range
established for--
       (A) the applicable category of offense committed
by the applicable category of defendant as set forth in
the guidelines--
. . .; or
       (B) in the case of a violation of probation or
supervised release, the applicable guidelines or policy
statements issued by the Sentencing Commission pursuant
. . .;
    (5) any pertinent policy statement- . . .; and
    (7) the need to provide restitution to any victims
of the offense.
```
18 U.S.C. § 3553(a)(1), (a)(2)(B),(C),(D), (a)(4), (a)(5), (a)(6), and (a)(7).

and the interest of justice." 18 U.S.C. § 3583(e)(1). The Second Circuit has held that:

> Occasionally, changed circumstances--for instance, exceptionally good behavior by the defendant or a downward turn in the defendant's ability to pay a fine or restitution imposed as conditions of release--will render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a). In such cases, the court may . . . discharge the defendant from supervised release.

United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997). "Although the District Court is not required to set forth detailed findings on each statutory factor, . . . a statement that the district judge has considered the statutory factors is sufficient." United States v. Sarvis, No. 99-1276, 2000 U.S. App. LEXIS 302, at *4-5 (2d Cir. Jan. 5, 2000).

**III. Discussion**

The changed circumstance advanced by Grimaldi justifying early termination is the costly life insurance premium which he can ill afford in his constrained financial circumstances. Presumably, the premium will be reduced to some degree when his status on "supervised release" is concluded; thus, defendant's "changed circumstance" is that he must forego life insurance coverage until then--as unaffordable--or suffer financial privation to obtain the desired coverage.

While Grimaldi's apprehension about providing for the financial needs of his wife and parents if he should die is understandable, he points to no particular risk that his life

expectancy is compromised in any way.  Moreover, while Mr. Grimaldi may not have known about this consequence of his conviction, it is not a new circumstance, and since a term of supervised release is statutorily required for his offenses of conviction, the increased premium is a consequence for every convicted felon seeking a life insurance policy with Prudential.

Defendant Grimaldi has commendably complied with all required conditions of his supervised release, including payment of fine and restitution.  He represents that he has voluntarily spoken to college students at the University of Connecticut and Western Connecticut State University "regarding the importance of maintaining one's moral compass" (Def. Mem. ¶ 7) to provide guidance to the attending students.  Because this salutary activity is above and beyond what is required for all supervisees, it merits special consideration.  Indeed, it is consistent with the residual strength of character that the Court recognized in Grimaldi in fashioning a relatively short prison term, inasmuch as the defendant pulled out of the serious fraud conspiracy well before knowing he was under investigation.

Of the nine extra-statutory factors to be considered in determining whether to approve early termination of supervised release, see 18 U.S.C. § 3583(e); United States v. Weintraub, 371

F. Supp. 2d 164, 166 (D. Conn. 2005),[2] only "aggravated role in the offense of conviction" appears to weigh against approval. Having been part of the unholy alliance with Ganim and Pinto to corrupt the processes of local government for personal financial gain, Grimaldi's role should not be understated, even though he was not a leader or organizer or involved as long as others, and notwithstanding the Court's belief that his moral compass will never again take him so far off course.

Although there is nothing to fault and much to commend about the defendant's post-release conduct, completion of the full term of supervised release has not been demonstrated to be too harsh

---

[2] The Court observed in Weintraub:

> The standards adopted by the Judicial Conference Committee on Criminal Law in March 2003 elaborate on the statutory criteria and recommend evaluation of nine specific factors when deciding whether to approve early termination of supervised release. . . . They are:
>
> 1. stable community reintegration (e.g., residence, family, employment);
> 2. progressive strides toward supervision objectives and in compliance [sic] with all conditions of supervision;
> 3. no aggravated role in the offense of conviction, particularly large drug or fraud offenses;
> 4. no history of violence ...
> 5. no recent arrests or convictions...
> 6. no recent evidence of alcohol or drug abuse;
> 7. no recent psychiatric episodes;
> 8. no identifiable risk to the safety of any identifiable victim; and
> 9. no identifiable risk to public safety ...

371 F. Supp. 2d at 166.

or inappropriately tailored to serve the general "need for the sentence imposed-- . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. 3553(a)(2)(A).  Simply said, there are numerous adverse consequences for those convicted of felony offenses, and the financial consequence Mr. Grimaldi faces is one inherent to supervised release and not a result of any particular term of condition imposed.  In light of the sentencing purposes for which the term of supervised release was imposed, as well as the transient nature of the claimed hardship, the interests of justice are better served by requiring defendant to complete the term of supervised release imposed on him.

**IV. Conclusion**

Accordingly, defendant's Motion for Early Termination of Supervised Release [Doc. # 54] is DENIED.

IT IS SO ORDERED.

/s/

_____
JANET BOND ARTERTON
United States District Judge

**Dated at New Haven, Connecticut, this 5th day of April, 2007.**

7